ANDERSON and others, Trustees, Appellants, vs. BYERS and others, Respondents.*

*February 7—March 8, 1955.*

* Motion for rehearing denied, with $25 costs, on May 3, 1955.

94

For the appellants there were briefs by *Velte & Molzow* of Neenah, and oral argument by *Charles H. Velte.*

For the respondents there was a brief and oral argument by *R. E. Johnson* of Waupaca.

MARTIN, J.    Appellants assign no errors but are "appealing for a more favorable judgment."

There is one basic question presented: Have the acts of the defendants constituted such a departure from the established faith, doctrine, and practices of the Baptist Church as to remove from them the possession and use of the property?

The parties agree that the individual Baptist church is an autonomous entity. As stated in Hiscox, The New Directory for Baptist Churches (p. 145):

"As has been said, each particular and individual church is actually and absolutely independent in the exercise of all its churchly rights, privileges, and prerogatives; independent of all other churches, individuals, and bodies of men whatever, and is under law to Christ alone."

Democracy and independency are said to be essential characteristics of Baptist polity. Appellants point out that while local Baptist churches resort to an increasing extent to association with one another "in the wider Kingdom enterprise," the principle involved in association or co-operation does not affect the independence or autonomy of the individual church.

Defendants do not deny that the association with the Conservative Baptist organizations was contrary to the constitutional designation of affiliation, since no amendment of that provision had been made. They have complied with the judgment restraining them from voting any such unconstitutional affiliation. Appellants contend, however, that the improper temporary affiliation constituted such a departure from the "main stream of Baptist heritage" that defendants have lost any right to the church property.

The trial court determined that faith and doctrine play no part in the affiliation of an individual church with any of these organizations, since such organizations cannot limit the autonomy of a true Baptist church. There was ample evidence to support such finding.

Dr. David Moore, an expert witness for the appellants, testified that such association or co-operation is a procedural consideration and is never based on doctrinal belief; defendants' experts testified to the same effect.

As explained in Hiscox, *supra,* ch. XIII, these associations are composed of the pastors and "messengers" of various churches, who meet annually for the promotion of missionary work, encouragement of new churches, and aid to needy ones. These individuals, as members of the association, have no authority to act for their local churches or to bind them in any way. They merely report back on the matters dealt with at the meeting, make suggestions or requests, "all of which the churches will give such attention as may seem to them right and proper." The individual Baptist church cannot itself be a member of such an association or of any other body, since such a relationship would violate its sacred charter and cause the loss of its independence.

Plaintiffs allege that the Conservative organizations are not Baptistic, and that by affiliation with those organizations the majority support was given to doctrine fundamentally opposed to the established faith and practice of the Baptist Church. It is unnecessary for the court to decide whether or not there exist differences of opinion in the field of doctrine between the American Baptist Convention and the Conservatives. The question is whether any such differences were reflected in a change from the teachings and practices as adhered to by the First Baptist Church of Waupaca before the controversy arose. The record fails to support the allegation that there has been such change in doctrine and faith. On the contrary, Reverend Turk, an ex-pastor, testified that he had returned to the Waupaca church on numerous visits since the defendant Byers became its pastor, and that the same faith and doctrine were being taught by Reverend Byers as the witness himself had taught, believing it to be the historic doctrine of the church. Another former member of the

church, now a Baptist pastor, Reverend Sorenson, testified he attended the church regularly since 1935 and the doctrine and faith taught by Reverend Byers were the same as the witness had been taught in his early association with the church. A number of lay people testified to the same effect, and none of this evidence is disputed.

The same type of argument is made with respect to the Conservative organizations being creedal organizations, having a written doctrinal statement to which they require their affiliates to agree. Whether or not such is the fact, plaintiffs offered no proof on the trial that the defendants subscribed to such a creed or required members of the church to do so. The only evidence in the record is that offered by defendants to the effect that no one has ever been required to submit to a creedal statement as a condition of membership or otherwise.

It must be remembered that the kind of affiliation here involved is primarily for the purpose of distributing undesignated mission funds. Such an affiliation has never had the effect of compelling individual members to support any missionary cause against their will. The record shows that the members of the Waupaca church have always been, and are now, free to specify the recipients of their gifts. Before the Northern Baptist Convention was formed, the local church sent its undesignated mission funds to various mission societies.

After the formation of the Northern Baptist Convention to facilitate the distribution of such funds, the Waupaca church started sending its undesignated funds to that Convention. When it drew its constitution, provision was made therein for affiliation with the Northern Baptist Convention. Until that provision appeared in its constitution, the Waupaca church could affiliate with any such organization as its members, by majority vote, should determine. Thereafter, its right to change such affiliation was affected only by the necessity of amending the constitution. The need to amend

the constitution, however, does not make the affiliation something other than basically voluntary.

We agree with the trial court that there has been no departure from the Baptist faith and doctrine as would make defendants no longer Baptist in the historic sense of the word.

Plaintiffs strenuously argue that there must be adherence to the "established order of things" and that affiliation with the Northern Baptists is an integral part of that established order. They contend that the constitutional designation of affiliation with the Northern Baptists is a restatement of the original compact or covenant entered into by the members of the church. The early written records show only that the original compact involved the adoption of the New Hampshire Confession of Faith. In banding together as a Baptist church, the original members agreed to no affiliation at all, and the Northern Baptist Convention was not in existence until 1907. Plaintiffs' arguments are an attempt to make the Northern Baptist Convention appear as the only true Baptist group and disaffiliation from that group as departure from the Baptist faith. The evidence does not support such a conclusion. Since the local Baptist church is an independent, autonomous entity, it draws its Baptistic character, not from affiliation with any other group, but from its own teachings, faith, and doctrine. Though affiliation with the Northern Baptists has been the established practice for some years, such affiliation, not being doctrinal in nature, may be changed any time the congregation desires to change it. If that were not so, if the local church is now powerless to disaffiliate itself from the Northern Baptists, it has lost rather than maintained its historic Baptist autonomy.

It was found by the trial court that the removal of certain members from the rolls of the church was improper as contrary to the long-established practice of naming such members in the motion acted upon and giving them notice and opportunity for hearing. The judgment reinstated such members,

and plaintiffs do not seriously contend that the disregard of established procedure in that instance compels the conclusion that defendants have irrevocably departed from the Baptist faith.

The rule in Wisconsin follows *Watson v. Jones* (1872), 80 U. S. (13 Wall.) 679, 725, 20 L. Ed. 666, 675, where it was held that in the case of an independent, self-governing religious organization, such as we have here:

"If the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property. The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the church or congregation. This ruling admits of no inquiry into the existing religious opinions of those who comprise the legal or regular organization; for, if such was permitted, a very small minority, without any officers of the church among them, might be found to be the only faithful supporters of the religious dogmas of the founders of the church. There being no such trust imposed upon the property when purchased or given, the court will not imply one for the purpose of expelling from its use those who by regular succession and order constitute the church, because they may have changed in some respect their views of religious truth."

As pointed out above, the real estate was conveyed in 1862 to "the trustees of the First Baptist Church in the village of Waupaca." There are no conditions or restrictions in the deed, and the purposes of the church, as set forth in the articles of incorporation, are simply "religious, charitable, and educational." The only trust implied is that the church shall continue in the Baptist faith and doctrine.

In *Fadness v. Braunborg* (1889), 73 Wis. 257, 293, 41 N. W. 84, this court said:

"Courts deal with tangible rights, not with spiritual conceptions unless they are incidentally and necessarily involved in the determination of legal rights. Such trusts, when valid and so ascertained, must of course be enforced; but to call for equitable interference there must be such a real and substantial departure from the designated faith or doctrine as will be in contravention of such trust." (Citing *Watson v. Jones* and other cases.)

The evidence in this case supports the trial court's finding that there has been no "real and substantial" departure from the Baptist faith and doctrine by defendants, and under the law the property must remain in the majority.

A great many arguments have been advanced in the briefs to which we have given consideration in arriving at our decision, but exhaustive comment upon them would serve only to extend the opinion beyond a necessary and reasonable length.

*By the Court.*—Judgment affirmed.